**AIRCO INDUSTRIAL GASES, Plaintiff,**

v.

**TEAMSTERS HEALTH AND WELFARE PENSION FUND OF PHILADELPHIA & VICINITY, Defendant.**

**Civ. A. No. 84–123 MMS.**

United States District Court,
D. Delaware.

Sept. 11, 1985.

Stanley William Balick, Stanley William Balick, P.A., Wilmington, Del., of counsel; Robert J. Bray, Jr., and Thomas M. Tammany, Robert J. Bray & Associates, Philadelphia, Pa., for plaintiff.

Francis J. Trzuskowski, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Del., of counsel; James J. Leyden, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Airco Industrial Gases ("Airco") instituted this action against the Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity ("Fund") to recover payments mistakenly made to the Fund. Plaintiff alleges causes of action under sections 301 and 302 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §§ 185, 186, section 403(c) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1103(c), and the Delaware law of unjust enrichment. Jurisdiction is alleged under 28 U.S.C. § 1331, the federal question jurisdictional statute.

With the relevant facts being largely undisputed, the parties have filed cross-motions for summary judgment. The question presented by these motions is whether an employer has a cause of action under the LMRA, ERISA, federal common law, or state law to recover contributions mistakenly made to a pension fund. For the reasons stated below, the Court finds that the employer has no cause of action under the LMRA or ERISA, but it may recover under the federal common law of unjust enrichment. However, summary judgment cannot be granted on an unjust enrichment claim because the financial stability of the Fund is a material factual issue in dispute.

## I. FACTS

The relevant facts regarding the mistaken payments are not in dispute. Airco is an employer of union labor located in Delaware. The Fund is a multiemployer employee benefit plan as defined in ERISA. During the period in question, Airco was a party to two separate collective bargaining agreements, one with the Highway Truck Drivers and the other with the Helpers Union, Local 107. One of these agreements, and its predecessor agreements, obligated Airco to make contributions to the Fund on behalf of Airco's driver employees. Under the other agreement, Airco was obligated to make pension contributions on behalf of its production and maintenance employees to a separate pension plan, and not to the Fund.

In 1976, Airco erroneously informed the Fund that John Lucas and Walter Dobromilski were employees for whom monthly contributions were due. The Fund accepted this representation without verifying it. In fact, Lucas and Dobromilski were Airco production and maintenance employees, and Airco was not obligated to contribute to the Fund on their behalf. From June, 1976 to April, 1983, Airco made a total of $25,831.41 in payments to the Fund on behalf of Lucas and Dobromilski.

In 1983, Airco discovered its error during a review of its corporate pension plan con-

tributions. Neither party had been aware of the error until Airco discovered it. Airco notified the Fund of the error and demanded that the Fund return the mistakenly paid money, plus interest. In response, the Fund, in purported reliance on the decision in *Crown, Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia,* 549 F.Supp. 307 (E.D.Pa.1982), *aff'd mem.,* 720 F.2d 661 (3d Cir.1983), rejected the demand on September 26, 1983. The Fund's letter stated: "[T]he Trustees of the Teamsters Health and Welfare and Pension Funds of Philadelphia and Vicinity [sic] have concluded that no overpaid contributions shall be returned to any employer. Likewise, ... the Trustees have further determined that no contributing employer shall be entitled to an offset against delinquent contributions due and owing." Complaint, Docket Item ("Dkt.") 1, Exh. E. The Fund's Administrator later stated that Lucas and Dobromilski will never be eligible to receive pension benefits from the Fund, because they are not covered employees under the relevant collective bargaining agreement. Deposition of Charles J. Schaffer, Jr., Dkt. 10, at 51–52. Airco brought this action on March 2, 1984 to recover the mistaken contributions made on behalf of Lucas and Dobromilski.

## II. ANALYSIS

Plaintiff seeks recovery of the money mistakenly paid to the Fund under several alternative theories. Each will be discussed in turn.

### A. LMRA

■ Plaintiff alleges two causes of action under the LMRA: first, a cause of action under section 301(a) of the LMRA, 29 U.S.C. § 185(a); second, a cause of action founded on section 302(c)(5)(B) of the LMRA, 29 U.S.C. § 186(c)(5)(B). Section 185(a)[1] provides, in pertinent part: "Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties...." Plaintiff contends its payments

were violative of its collective bargaining agreement with the Fund because Lucas and Dobromilski were not employees within that bargaining unit. It follows, Airco argues, that the money should be returned.

The most evident defect in plaintiff's argument is that this is not an action "for violation of contracts." The collective bargaining agreement does not forbid the Fund from accepting, or require the Fund to return, mistakenly paid contributions. The only case cited by plaintiff in support of its argument, *Laborers Health & Welfare Trust Fund v. Kaufman & Broad of Northern California, Inc.,* 707 F.2d 412 (9th Cir.1983), is inapposite. Plaintiffs there sued to enforce a contract, and the primary issue was one of contract interpretation. The Fund, however, has not breached its contract with Airco, as mistaken payments are not covered by the contract.

■ Plaintiff's second LMRA theory is that it has a cause of action founded on section 302(c) of the LMRA, 29 U.S.C. § 186(c), which allegedly forbids payments by an employer to an employee representative unless they are made pursuant to a written agreement. Section 186(e), which grants federal courts jurisdiction to enforce section 186, provides that district courts only have the power "to restrain violations of this section." 29 U.S.C. § 186(e). A damage remedy is not provided. For this reason, other federal courts faced with this issue have held that section 186 does not authorize an action by an employer for restitution of mistaken payments. *See, e.g., Award Service, Inc. v. Northern California Retail Clerks Unions & Food Employers Joint Pension Trust Fund,* 763 F.2d 1066, 1069–70 (9th Cir.1985); *R.V. Cloud Co. v. Western Conference of Teamsters Pension Trust Fund,* 566 F.Supp. 1426, 1430 (N.D.Cal.1983). Plaintiff has not demonstrated why those cases are wrong. Accordingly, plaintiff's causes

---

**1.** For the sake of clarity, statutory sections will be cited according to their codification in Title 29 of the United States Code, rather than according to the original acts.

of action under the LMRA will be dismissed.

## B. ERISA

Plaintiff's primary claim is that its action for recovery of mistaken contributions is authorized under ERISA. Plaintiff relies on section 403(c)(2)(A) of ERISA, 29 U.S.C. § 1103(c)(2)(A), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Section 1103(c) provides, in pertinent part:

> (1) Except as provided in paragraph (2), ... the assets of a plan shall never inure to the benefit of any employer....
>
> (2)(A) In the case of a contribution, ...
>
> (ii) made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution ... to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

Plaintiff alleges that the language in section 1103(c)(2)(A)(ii) allowing funds to return mistaken contributions creates a cause of action in favor of employers for the return of those contributions.

■ Plaintiff's ERISA contentions raises two related questions: First, whether this Court has jurisdiction over plaintiff's claim under ERISA; second, whether plaintiff's claim states a cognizable cause of action. Section 502(a) of ERISA, 29 U.S.C. § 1132(a), authorizes civil actions brought by the Secretary, or by a participant, beneficiary or fiduciary. The statute further provides that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(e)(1). The Third Circuit Court of Appeals has recently stated that this section and its list of parties who may sue must be read "narrowly and literally." *Northeast Department ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 153 (3d Cir.1985). In that case, the appellate court held that section 1132 does not autho-

rize federal jurisdiction over a suit brought by an employee pension fund. *Id.* at 154; *see also New Jersey State AFL–CIO v. New Jersey*, 747 F.2d 891, 892 (3d Cir.1984) (labor unions cannot bring suit under 29 U.S.C. § 1132). It follows that plaintiff's action cannot be maintained under 29 U.S.C. § 1132 because employers are not among the potential plaintiffs listed in the statute.

Plaintiff has attempted to avoid this problem by alleging that jurisdiction exists under 28 U.S.C. § 1331, which gives federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* "A claim 'arises under' federal law only if '[a] right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action.'" *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 1847, 77 L.Ed.2d 420 (1983), *quoting Gully v. First National Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)." *New Jersey State AFL–CIO v. New Jersey*, 747 F.2d at 892. Plaintiff alleges that this action arises under section 403(c) of ERISA, 29 U.S.C. § 1103(c), because plaintiff's alleged cause of action is based on that section.

■ The issue of what actions arise under ERISA pursuant to 28 U.S.C. § 1331 was recently addressed by a divided panel of the Third Circuit Court of Appeals in *Northeast Department ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, supra.* Although the court found that federal subject matter jurisdiction existed, each panel member reached that conclusion through different reasoning. *See* 764 F.2d at 151. It is unnecessary, however, for this Court to inject itself into the debate within the Third Circuit appellate court, because plaintiff alleges a cause of action under a specific section of ERISA. An action which requires a construction of a federal statute arises under federal law for section 1331 purposes. *See Lindy v. Lynn*, 501 F.2d

1367, 1369 (3d Cir.1974); *Award Service, Inc. v. Northern California Retail Clerks Union & Food Employers Joint Pension Trust Fund*, 763 F.2d at 1068. Although a serious question exists whether plaintiff has a cause of action under section 1103(c), this Court has jurisdiction under 28 U.S.C. § 1331 for the purpose of determining whether plaintiff's cause of action exists. *See Award Service*, 763 F.2d at 1068; *Crown, Cork & Seal Co. v. Teamsters Pension Fund of Philadelphia*, 549 F.Supp. 307, 310 (E.D.Pa.1982), *aff'd mem.*, 720 F.2d 661 (3d Cir.1983).

■ The more difficult question is whether plaintiff, an employer, has a cause of action under section 1103(c)(2)(A), to recover pension contributions mistakenly made to the Fund. Plaintiff contends the language used in section 1103(c)(2)(A), quoted in full above, providing that section 1103(c)(1) "shall not prohibit the return of [a mistaken] contribution" to an employer, creates an affirmative right in the employer to recover mistaken contributions. As an initial matter, it is evident that the statute does not create an express cause of action for the employer. *See Award Service*, 763 F.2d at 1068; *Crown, Cork & Seal*, 549 F.Supp. at 311. No such right is granted to employers in section 1103, and section 1132, which provides for civil enforcement of ERISA, does not include employers among the list of parties authorized to bring civil actions to enforce ERISA's provisions. *See* 29 U.S.C. § 1132(a) (civil actions may be brought by the Secretary of Labor, or by a participant, beneficiary or fiduciary).

Plaintiff maintains, however, that an implied cause of action exists under section 1103 for return of mistaken contributions. Plaintiff states that the majority of federal courts faced with this issue have found that such a cause of action exists. *See Award Service*, 763 F.2d at 1068; *Team-*

*sters Local 639-Employers Health Trust v. Cassidy Trucking, Inc.*, 646 F.2d 865, 868 (4th Cir.1981); *E.M. Trucks, Inc. v. Central States Southeast & Southwest Areas Pension Plan*, 517 F.Supp. 1122, 1124 (D.Minn.1981); *cf. Chase v. Trustees of Western Conference of Teamsters Pension Trust Fund*, 753 F.2d 744, 749–50 (9th Cir.1985) (participants can sue for return of contributions); *Peckham v. Board of Trustees of International Brotherhood of Painters & Allied Trades Union & Industry National Pension Fund*, 719 F.2d 1063, 1066 (10th Cir.1983), *modified and reaff'd*, 724 F.2d 100 (10th Cir.1983) (same); *Ethridge v. Masonry Contractors, Inc.*, 536 Supp. 365, 386 (N.D.Ga.1982) (employer can use mistaken contribution as set-off against claim for unpaid contributions); *but see Crown, Cork & Seal*, 549 F.Supp. at 311–12 (employers have no cause of action to recover mistaken contributions); *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 320 n. 6 (6th Cir.1984) (same) (dictum), *cert. denied*, — U.S. —, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985); *Kann v. Keystone Resources, Inc.*, 575 F.Supp. 1084, 1091 (W.D. Pa.1983) (same); *Hardy v. National Kinney of California, Inc.*, 571 F.Supp. 1214, 1215 (N.D.Cal.1983); *R.V. Cloud Co. v. Western Conference of Teamsters Pension Trust Fund*, 566 F.Supp. 1426, 1430 (N.D.Cal.1983);[2] *but cf. In Re Malone*, 39 B.R. 81, 82 (Bankr.E.D.Pa.1984) (employer-debtor has no right to set off overpayments against claim of pension fund-creditor). Because this authority is split and no case has been decided on this issue by this Court or the Third Circuit Court of Appeals,[3] a plenary analysis of an employer's implied right of action is warranted.

Under *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), a court must consider four factors in deciding whether to recognize that an implied right of action

---

**2.** It is doubtful that *Hardy* and *R.V. Cloud* are still good law, given the Ninth Circuit's subsequent decision in *Award Service*.

**3.** The Third Circuit's summary affirmance, without published opinion, of *Crown, Cork & Seal*,

*see* 720 F.2d 661 (3d Cir.1983), has no precedential value. *See* Internal Operating Procedures of the Third Circuit Court of Appeals, ch. V, § F, 28 U.S.C.App.

exists in a statute not expressly providing one:

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to case law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (citations omitted). As later decisions have made clear, the heart of this analysis is discerning and following congressional intent. *See Daily Income Fund, Inc., v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645; *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778 (3d Cir.1982).

Analysis of these factors demonstrate that Congress did not intend to create a cause of action for employers. First, both ERISA and MPPAA were primarily designed to protect the individual pension rights of participants and beneficiaries of pension plans. *See* 29 U.S.C. § 1001 (congressional findings and declaration of policy for ERISA); Joint Explanation of S. 1076; Multiemployer Pensions Plan Amendments Act of 1980, 126 Cong.Rec.S. 10111–13 (daily ed. July 29, 1980) (policy of MPPAA is to protect pension plans the interests of participants and beneficiaries). Plaintiff contends that the 1980 MPPAA amendment to section 1103(c), which broadened the section to allow plans to return mistaken contributions in more situations, means that section 1103(c)(2)(A)(ii) is designed to benefit employers. Although section 1103(c)(2)(A)(ii) does benefit employers because it allows plan administrators to return mistaken contributions, there is no indication, either in the language of the statute or in its legislative history, that this section was added for the *especial* benefit of employers. *See* H.Conf.Rep. No. 1280, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 5038, 5083 (legislative history of original section 403); 126 Cong.Rec. S 10130 (daily ed. July 29, 1980) (legislative history of MPPAA). Moreover, the statute clearly does not "create a federal right in favor of the plaintiff." *Cort v. Ash, supra.* None of the language used in the statute or in the legislative history speaks in terms of rights granted to employers; rather, the statutory language is concerned with fiduciary duties of plan administrators to their beneficiaries and is entirely permissive, i.e., it does not command that mistaken contributions should be returned. *See Crown, Cork & Seal,* 549 F.Supp. at 314.

Second, there is no indication of legislative intent to create a remedy in favor of employers. As noted above, the statutory language is not the type of language Congress has used to create a right of action. More importantly, the omission of employers among the entities who can sue to enforce section 1103 is a strong indication that Congress did not intend to grant employers a right of action. *See* 29 U.S.C. § 1132. It is a well-established maxim of statutory construction that the expression of one thing is the exclusion of another. In other parts of ERISA, Congress has specifically included employers, along with participants, beneficiaries, and fiduciaries, in its listing of persons entitled to bring actions to enforce certain ERISA provisions. *See, e.g.,* 29 U.S.C. § 1451(a). Plaintiff's contention that the omission of employers from section 1132 was a mere oversight in a massive bill is unpersuasive, as this would require the Court to believe that Congress was forgetful twice: first, in 1974, when it passed ERISA, and then in 1980, when it passed MPPAA. It is more likely that Congress' omission was intentional rather than forgetful.

Third, it is not clear whether creation of a remedy in favor of employers would be consistent with the statutory scheme,

which is primarily concerned with the fiscal health of pension funds. On one hand, allowing employers to recover mistaken contributions would take money from pension funds and could threaten their fiscal integrity. *See Crown, Cork & Seal,* 549 F.Supp. at 312. On the other hand, if employers cannot recover mistaken contributions, they might be less willing to participate in pension plans and may withhold payments when they have any doubt that the payments are required, for fear that those payments could not be recovered. *Cf. Chase,* 753 F.2d at 750 n. 6 (liberalization of refund provisions may encourage employer participation).

The fourth *Cort v. Ash* factor—whether this cause of action is traditionally relegated to state law—has no applicability in this statutory context, because ERISA preempts and supersedes all state law relating to pension plans. *See* 29 U.S.C. § 1144; *Murphy v. Heppenstall Co.,* 635 F.2d 233, 237 (3d Cir.1980), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982).

■ The conclusion compelled by this analysis of the four *Cort v. Ash* factors is that Congress did not intend to create a right of action for employers to recover mistaken contributions under section 1103(c)(2)(A)(ii). Virtually no support for such a right of action exists in the legislative history. Moreover, the language used by Congress in section 1103(c)(2)(A)(ii) is not language creating a statutory right in employers, especially given that the language appears in a section specifying the fiduciary duties of plan trustees and administrators to participants and beneficiaries. These facts, coupled with the omission of employers in section 1132, demonstrate that no implied right of action exists for

employers under section 1103(c)(2)(A)(ii).[4] Plaintiff's claim under that section must be dismissed for failure to state a cause of action.

■ This holding, however, does not preclude plaintiff from recovery, because plaintiff does have a right of action under the federal common law for unjust enrichment.[5] "In enacting ERISA, Congress authorized the evolution of a federal common law of pension plans." *Murphy v. Heppenstall Co.,* 635 F.2d at 237; *see Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923, 936 (3d Cir.1985); *Van Orman v. American Insurance Co.,* 680 F.2d 301 (3d Cir.1982); *Northeast Department ILGWU Health & Welfare Fund, supra,* 764 F.2d at 157 (opinion of Becker, J.). Included within this grant of authority is the power, in appropriate circumstances, to order restitution to prevent unjust enrichment. *See Van Orman v. American Insurance Co.,* 680 F.2d at 311–12; *Cummings v. Briggs & Stratton Retirement Plan,* 606 F.Supp. 659, 663–64 (E.D.Wis.1985). Thus, plaintiff has a cause of action for unjust enrichment under federal common law.[6]

This result is essentially consistent with the cases cited at page 948, *supra,* finding that a cause of action for return of mistaken payments exists under section 1103(c)(2)(A)(ii). The cause of action recognized by those courts is an equitable action that would rely on the same factors applicable to an unjust enrichment claim. *See, e.g., Award Service,* 763 F.2d at 1069; *Teamsters Local 639-Employers Health Trust v. Cassidy Trucking, Inc.,* 646 F.2d at 868.

Defendant contends that the recognition of a cause of action in favor of plaintiff under federal common law would contra-

---

**4.** To the extent that other courts have held differently, I respectfully disagree with their analyses and conclusions.

**5.** This Court has jurisdiction under 28 U.S.C. § 1331 over actions arising under federal common law. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Northeast Department ILGWU,* 764 F.2d at 156 (opinion of Becker, J.).

**6.** The existence of a federal common law action for unjust enrichment preempts plaintiff's claimed state law action. *See* 29 U.S.C. § 1144(a); *Murphy v. Heppenstall Co.,* 635 F.2d at 237. Accordingly, summary judgment will be granted to defendant on plaintiff's claim that it has a cause of action, based on Delaware law, for unjust enrichment.

vene Congress' intent in enacting ERISA and MPPAA and would provide the employer with a remedy not intended by Congress. The short answer to defendant's contention is that Congress' intent in enacting ERISA and MPPAA was to preempt state law and authorize the federal court to fill in the interstices of the statutes. An action for unjust enrichment, equitable in nature, and developed in light of the policies of ERISA, is appropriate and "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Van Orman v. American Insurance Co.*, 680 F.2d at 312 (quoting *United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973)). Moreover, the result of the *Cort v. Ash* analysis used above was not that Congress intended to forbid this cause of action, but only that there is insufficient evidence that Congress intended to provide a remedy under section 1103(c)(2)(A)(ii). A cause of action for unjust enrichment in this situation would not contravene ERISA or the policy of section 1103(c)(2)(A)(ii), because that section recognizes that a return of mistaken contributions to employers is consistent with ERISA.

In its briefs, plaintiff requested summary judgment on its unjust enrichment theory, alleging that no material federal issues exist. However, as plaintiff was forced to concede at oral argument, this action is not ripe for summary judgment under an unjust enrichment theory because material issues of fact do exist, such as the fiscal health of the Fund and the effect restitution would have on the Fund. Accordingly, plaintiff's motion for summary judgment will be denied on the unjust enrichment theory.