**SOUTH CENTRAL UNITED FOOD & COMMERCIAL WORKERS UNIONS, et al., Plaintiffs–Appellants,**

v.

**C & G MARKETS, INC., et al., Defendants–Appellees.**

No. 86–2824.

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1988.

**222**

Jeffrey P. Clark, Dean A. Strang, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, Wis., for plaintiffs-appellants.

Nancy Morrison O'Connor, Houston, Tex., for defendants-appellees.

Before CLARK, Chief Judge, BROWN, and JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

C & G Markets, Inc. (C & G) appeals from a judgment holding it liable for a delinquency in contributions made to its employee benefit plan, South Central United Commercial Workers Unions Employers' Health & Welfare Trust (South Central Trust). Against that delinquency, the district court offset mistakenly paid contributions. The offset was calculated prior to the determination of the interest and penalties authorized under ERISA and the Trust Agreement. The court denied auditor's costs, but awarded attorney's fees.

On appeal, the parties raise four issues: whether the district court erred in (i) finding an implied right of action under ERISA, 29 U.S.C. § 1103(c) for an employer seeking to recover mistaken contributions; (ii) offsetting the mistaken contributions prior to the calculation of interest and penalties; (iii) the calculation of interest due; and (iv) its calculation of appropriate costs, including the denial of auditor's fees, and attorney's fees.

We affirm the holding (i) which permitted C & G to recover mistakenly overpaid contributions and offset that amount against payments due. We vacate and remand for (ii and iii) calculation of the offset and interest due. We reverse the holding which (iv) denied auditor's fees and incorrectly determined the attorney's fee. We remand for calculation of an appropriate auditor's fee and a recalculation of the attorney's fee.

*How it all Began*

Prior to its dissolution on April 24, 1984, C & G was considered an employer as defined by ERISA,[1] and South Central Trust is a multi-employer qualified plan and an "employee benefit plan" as likewise defined by ERISA.[2] The Trust is administered by a Board of Trustees composed

---

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(5).

2. 29 U.S.C. § 1002(37)(A).

equally of trustees representing United Food and Commercial Workers' Union (Union) and trustees representing employers. The South Central Trust Plan provides health and welfare benefits to members of the union for whom contributions are made.

C & G was a party to a collective bargaining agreement with the Union which was effective from June 1, 1980 through May 29, 1983. During that period, C & G consistently contributed to the Plan on behalf of employees during the term of the agreement. In June 1983, the Union was decertified by a vote of the bargaining unit and, as a result, C & G was no longer obligated to make any contributions to the Plan on behalf of its employees.

Under the collective bargaining agreement, C & G was required to make contributions in favor of all employees, both probationary and nonprobationary, into the pension fund established by the Plan. The agreement additionally required contributions into the health and welfare fund on behalf of nonprobationary employees only.

During an audit conducted by South Central Trust's independent auditors in May 1983, it was discovered that C & G had paid $26,649.99 into the health and welfare fund on behalf of probationary employees during 1981–83. Under the collective bargaining agreement, C & G was not obligated to make these contributions. However, after accepting the contributions, South Central Trust extended benefits to those probationary employees on whose behalf contributions had mistakenly been made.[3] This same audit also revealed that for the years 1981–83, C & G had underpaid its contribution obligations for non-probationary employees to the pension fund in the amount of $37,812.31.

---

3. The trial court found that the Trust disbursed $1,736.17 to employees who were not members of the collective bargaining unit.

4. See 28 U.S.C. § 636(c); F.R.C.P. 73(a).

5. The amounts of the delinquency and the overpayment were hotly contested by both sides.

### Interest Becomes of Interest

Under the rules and regulations of the Plan, an employer is liable for interest on unpaid contributions at the rate of 20% per year. The Plan does not indicate whether the interest is simple or compound, or whether it is to be calculated monthly or annually. The Plan further provides that the delinquent employer shall be responsible for the payment of reasonable attorneys' fees, and other costs incurred by the Plan in connection with a lawsuit. The Plan is also entitled to recover liquidated damages equal to the amount of interest due on unpaid contributions. These provisions parallel ERISA § 1132(g).

### Litigation Sets In

South Central Trust instituted suit against C & G in 1984 for recovery of contributions allegedly owed by C & G to the Plan. C & G counterclaimed for contributions made by mistake on behalf of the probationary employees. This case was tried before a United States Magistrate sitting pursuant to agreement of the parties.[4]

A second audit[5] was conducted and the court accepted these later findings of the accountants as correct. The court found that C & G was delinquent in the amount of $37,812.31 which should have been paid into the Pension Fund on behalf of non-probationary employees. The court also determined that the collective bargaining agreement imposed no obligation on C & G to make contributions to the Plan on behalf of probationary employees, and contributions on their behalf were made by mistake.

Prior to calculating interest, the court offset the amount of mistaken overpayments against the delinquency. Interest on the balance due was calculated using an annual simple interest rate of 20% from the date of the May 1983 audit until Sep-

During discovery, C & G objected to the original audit. Fearing that the original audit would be objected to at trial on the grounds that the payroll summaries on which the audit was based were inadmissible hearsay, South Central had its auditors reconstruct the audit in its entirety from the original payroll records.

tember 1, 1986, sixteen days before final judgment was entered. Liquidated damages, attorneys' fees of $7,500 and costs in the amount of $6,174.93 were also awarded, but there was no mention made of auditor's costs in the final judgment. The parties appeal directly to this Court.[6]

## THE ISSUES

### I. Implied Right of Action to Recover Mistaken Contributions

South Central Trust characterizes the trial court's determination to set-off mistaken contributions against contributions owed as finding an implied right of action for the employer to recover these contributions under ERISA, 29 U.S.C. § 1103(c)(2)(A)(ii). It was not necessary for the trial court to have found an implied right of action because ERISA expressly permits recovery.

Section 1103(c)(2)(A) provides:

In the case of a contribution ...

(ii) made by an employer to a multiemployer plan by a mistake of fact or law ... paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake.

This section expressly gives an employer the right to have an overpayment returned, if that overpayment was the result of a mistake of fact or law. It was not necessary for the court to find an implied right of action if C & G came within the ambit of § 1103(c)(2)(A)(ii). There is no violation of ERISA's exclusive benefit rule if mistaken contributions are returned under this section.

The trial court found that C & G timely sought a refund of the contributions over-

paid on behalf of probationary employees. Rather than acting on that request, the trustees turned the request over to the Plan's attorneys for resolution. Our review is technically limited to a determination of whether the trustees acted in an arbitrary and capricious fashion in not refunding the amount which C & G overpaid. *Bayles v. Central States, Southeast and Southwest Areas Pension Fund*, 602 F.2d 97, 99 (5th Cir.1979). C & G suggests that we follow the Third Circuit in according *de novo* review to the plan administrator's refusal. *See Bruch v. Firestone Tire & Rubber*, 828 F.2d 134, 145 (3rd Cir.1987). As there is no reason given for the failure to issue a refund, there is nothing for this Court to review. We must simply apply the law in determining whether C & G was entitled to a refund.

The trial court determined that the collective bargaining agreement did not require contributions on behalf of probationary employees into the health and welfare portion of the Plan, and that contributions made on behalf of these employees were made by mistake. The parties do not dispute this ruling. The dispute arises over whether the mistaken contributions, in litigation to recover underpaid contributions, can be set-off against the underpaid contributions. This is not a decision within the discretion of the Trustees, but a question of law over which this court has plenary review.

While we tend to agree that ERISA does not provide a private right of action to an employer seeking to recover mistakenly overpaid contributions, we do not feel the need to address an issue which has already split the Circuits.[7] The situation presented here is somewhat different. The question

6. *See* F.R.C.P. 73(c).

7. The Circuits which have addressed the issue of whether ERISA carries with it an implied right of action for recovery of mistaken contributions have split. *Coal Co. v. Combs*, 796 F.2d 394, 396–99 (11th Cir.1986); *Cork & Seal Co. v. Teamsters Pension Fund*, 549 F.Supp. 307, 312 (E.D.Pa.1982), *aff'd*, 720 F.2d 661 (3d Cir.1983) (no implied right of action); *Service Inc. v. Northern California Retail Clerks Unions & Employers Joint Pension Trust Fund*, 763 F.2d 1066, 1068–69 (9th Cir.1985), *cert. denied*, 474 U.S.

1081, 106 S.Ct. 850, 88 L.Ed.2d 890 (1986); *see also Ethridge v. Masonry Contractors, Inc.*, 536 F. Supp. 365, 368 (N.D.Ga.1982) (ERISA does provide an implied right of action); *Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 233–36 (6th Cir.1986); *see also Airco Industrial Gases v. Teamsters Health & Welfare Pension Fund*, 618 F.Supp. 943, 948–50 (D.Del.1985) (common law right of restitution permits an employer to seek recovery in the federal courts).

with which we are faced is not whether there is an implied right of action under ERISA, but whether an employer is entitled to a set-off for contributions mistakenly made. The two situations are distinguishable.

■ The first involves a direct suit by an employer against a plan. If this were the case presented, we would follow the Eleventh and Third Circuits in finding no right of action. Here, however, the original action was brought by the plan trustee against the employer. C & G simply counterclaimed for overpayment. In this limited situation, we hold that there is a right to offset mistakenly overpaid contributions against a delinquency owed. We wish to make it absolutely clear that we are not establishing any affirmative right of action in favor of the employer under ERISA. We are simply applying ERISA to permit a refund of mistakenly overpaid contributions.

## II. Front-end Offset

■ South Central Trust asserts that the lower court erred in allowing C & G to offset mistaken payments prior to calculation of interest on the amount ($37,812.31) which was due as unpaid contributions. The argument presented is that, by deducting the overpayments first, the court effectively gave C & G the equivalent of twenty percent (20%) interest on the delinquency to the extent that it was cancelled out by the overpayment.

On the other hand, South Central Trust had full use of the overpaid funds and, theoretically at least, earned interest on that amount from the time of the overpayment until the date the balance was struck. If some sort of front-end offset is not used, South Central Trust will have had the use of the money which was mistakenly overpaid.

Interest on the full delinquent sum ($37,-000) is due at the rate of twenty percent (20%) simple interest from the date of the delinquency until the date the delinquent

sum is paid. Since the statute authorizes a refund, we fail to see why ordinary principles would not entitle C & G to recover simple interest, at the legal rate, on the overpaid contributions from the date of the overpayment until the date the balance is struck on the offset. In addition, South Central Trust is entitled to full credit for benefits which were not required under the Plan, but which were paid on behalf of probationary employees for whom contributions were mistakenly received.[8]

## III. Calculation of Interest

The trial court held that interest was to be calculated from the date of the corrected audit. This is contrary to the view of this Court. Although the audit may well have been the impetus necessary to bring the deficiency to light, the preparation of the audit was not the factor which triggered the application of the Plan's provision for calculating interest and statutory penalties. Interest must be calculated from the date of the deficiency until the date the deficiency is paid and we remand for the appropriate calculation.

South Central Trust also objects to the method by which the interest was calculated. The District Court ordered interest calculated "based upon the rate provided under the plan, that is twenty percent (20%) simple interest ..." The Delinquency Policy of the Plan provides for a late charge against delinquent employers of twenty percent (20%) of the delinquent amount. (Pl. Ex. 9a). The Plan does not indicate whether the interest is to be simple or compounded at specific intervals, only that the charge shall not exceed the maximum permitted by law. Although South Central Trust directs us to § 6622 of the Internal Revenue Code (IRC)[9] as an aid in interpreting the provisions of the Delinquency Policy, we find such recourse unnecessary, and affirm the ruling of the lower court.

ERISA provides for an award of interest in favor of the plan to be calculated according to the rate provided for in the plan.

---

**8.** *See* n. 3, *supra.*

**9.** Section 6622 provides that interest calculated under that section shall be compounded daily.

Only if the plan fails to specify an interest rate should the IRC rate be used. 29 U.S.C. § 1132(g)(2). Because South Central Trust does specify an interest rate in the Delinquency Policy, there is no reason to look to the IRC.

■ ERISA does not require that interest be compounded. The statute directs courts to the interest provided for by the parties to the agreement. The court could, as it did, determine that from the absence of a contrary directive, the Delinquency Policy provided for simple, not compound, interest. There is no basis for the argument that 20% interest, with no mention of a time period, means 20% interest compounded monthly. We concur in the decision to calculate simple interest at twenty percent.

### IV. Attorney's Fees and Auditor's Costs

■ South Central Trust requested attorney's fees in the amount of $58,359.21; the court awarded $7,500. The court refused to award fees for time spent on work which the court felt was unnecessary. This conclusory justification is insufficient.

It is the settled law of this circuit that a trial court must use the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974) in calculating an award of attorney's fees. *Abrams v. Baylor College of Medicine*, 805 F.2d 528 (5th Cir.1986); *Brantley v. Surles*, 804 F.2d 321 (5th Cir.1986). The court completely failed to do so here, and left a record insufficient to permit, as *Johnson* contemplates, an independent analytical review. We must vacate the award of attorney's fees and remand for consideration in light of the *Johnson* factors.

■ South Central Trust additionally requested recovery of its auditor's fees under ERISA and the earlier decision of this circuit in *Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Construction Co.*, 767 F.2d 1170 (5th Cir. 1980). Although the court accepted the findings of the second audit as accurate, and used those figures to determine the judgment, there was no award of auditor's

fees, nor any explanation for the failure to do so. This is clear error and we must remand for an analysis and determination of the auditor's fees consistent with *Carpenters*.

### The End of the Tale

The decision of the trial court to offset the overpaid contributions against the delinquency owed was essentially correct and we therefore affirm the judgment in that respect. However, the method by which the offset was calculated was incorrect, and consequently the interest award was also incorrect. We vacate the judgment and remand for a recalculation of the amount due South Central Trust and the interest which will be due thereon.

The trial court denied auditor's fees. These costs are proper elements of damages under the trust agreement, ERISA and our previous holding in *Carpenters*. We reverse and remand for calculation of an appropriate auditor's fee. The trial court improperly failed to consider the *Johnson* factors in the calculation of the attorney's fee. We remand for the determination of an appropriate attorney's fee in light of these factors.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.